Arguments not to exceed 15 minutes per side. Mr. Mackler for appellate. May it please the court, I would like to reserve six minutes for rebuttal, please. My name is James Mackler. I'm appointed counsel for the appellant, Mr. Abdullahi Farah. The reason we're here today, really, is because Mr. Farah made a very difficult yet understandable choice based on fear to not comply with a lawful order by the court. Mr. Farah refused to testify against the Somali gang in the Adan case, the underlying case here. He was punished for that choice, punished for contempt, and then the government chose to punish him again for the exact same act, and that's double jeopardy. Mr. Farah was also prosecuted under an unconstitutional statute, 18 U.S.C. 1591. I'm going to get into the law underpinning both of those claims in just a moment, but I'd like to point out two important facts, just two that I think are very important to keep in the front of your minds. First, the court found that Mr. Farah's conduct had no effect whatsoever on the judicial proceedings. In other words, there was no actual obstruction caused by his failure to testify at the material witness deposition. And second, it was stipulated at trial that Mr. Farah provided all of the information he had to the government prior to this contempt issue, prior to the material grand jury proceedings? That's right, and in numerous informal sessions with the U.S. Attorney's Office. Mr. Farah testified before the grand jury many times, met with the U.S. Attorney's Office many times, helped them to identify defendants, listened to audio recordings. Actually, there's no dispute that he was extremely cooperative and helpful up until the time he was ordered to testify at trial. And then just so I'm sure, just so I'm correct, he was found in civil contempt first and then criminal contempt, and then there was an attempt for second civil contempt, and the judge refused to grant that second civil contempt. Was the deposition with respect to the future trial of new defendants that were not tried in the first case? The deposition was with respect to future unscheduled trials. The government had severed the trials into multiple parts. To this day, the trials are still ongoing, and frankly, Judge, I don't think there's any way to know who was going to be party to those upcoming trials. But we do know... The first contempt was for not testifying at a particular trial. That's right, Judge. That involved certain people. That's right, Judge. Defendants. That's right. And the deposition was pertaining to other people in the future who might be tried. Is that right? That's right, Judge. I think that's how that... I'm not sure if it would have been possible for some of the same defendants to have come up again in some other way. I just don't know, because those trials, again, had not been set and still haven't been set yet. But Mr. Farrar stated to Judge Campbell at trial, I'm not testifying in the Adan case. He made that very, very clear. And then... The Adan case is a case involving a conspiracy of approximately 30 people. That's right. So... And then there are separate trials which are being scheduled for various reasons, such as availability of defense counsel for the 30 different defendants and various other reasons. That's right. And it bears emphasis that both this court and the district courts have said that a material witness deposition is ancillary to the underlying proceeding. In other words, they're part and parcel. They're the same proceeding. And in this case, they're very close in time as well. Mr. Farrar told Judge Campbell, I'm not going to testify at the Adan trial. Then the government, knowing the full scope of his contempt, knowing that there were future trials, that there were 30 defendants, knowing all the implications of that, put him on trial, a bench trial, only indicting or only asking that he be tried for contempt. Certainly, they could have argued about the 30 future defendants. They could have asked for greater penalties. They could have gone for felony contempt. They chose to try him for misdemeanor contempt. With all of the facts out there, the government got a conviction, got a four-month sentence, and then, unhappy with that four-month sentence, indicted Mr. Farrar again when he simply restated at a deposition, I'm not going to testify at trial. I've cited the Yates case because it's really very similar to a situation where someone has asked, will you testify that so-and-so is a communist? No, I won't. Will you testify that this other person is a communist? No, I won't. This one? No, I won't. That's one act of contempt. It's not 10 acts. In Yates, were the questions, I know there were 11 questions, were they involving 11 different people? My understanding is they were involving 11 different people, yes, Judge. The question in each case was, is so-and-so a communist? That's right, Judge. That's right. In that case, they're separated by moments, I suppose, but the time frame really doesn't matter as a matter of law. If they'd waited until the next day to ask what about this person, the result would have been the same. Suppose that the case, which is total hypothetical, is that somebody's involved with drug dealing and there are 10 people in the neighborhood who are involved in drug dealing and those 10 people are separately tried because they have separate drug deals. Wouldn't there be separate contempts if the individual refused to testify in the 10 different trials involving 10 separate activities? Well, Judge, it is hypothetical and it's not the case here. Wouldn't there be? If the government had indicted all of those people in one indictment and had spent months gathering evidence from this witness in regards to all those people to prepare a case in that indictment, then it would be the same situation. If they were 10 separate people with 10 separate situations, then it would be 10 separate instances of contempt. It's hard to know in that hypothetical, but ours is much clearer. He was involved in what's always been referred to as the Adan case, this ongoing conspiracy. That's what he was helping with. That's what they wanted him to testify on and that's what he eventually said, I'm not going to testify on. It doesn't quite match the hypothetical. I think it would really depend, Your Honor. The second, I want to make sure I have some time to talk about this because Count 3 is a different argument to a large extent. Section 18 U.S.C. 1591 D is simply unconstitutional. It's unconstitutionally vague as written. As you all know, the language makes it a crime to in any way interfere with a sex trafficking prosecution. There's no mens rea, there's no wrongful component, there's no corrupt component as we would typically find in an obstruction statute. That extraordinarily broad language criminalizes a vast swath of conduct, much of which is perfectly legal, in fact, encouraged. Zealous... The statute doesn't have the word knowingly in that section D. It does not. It does not have the word knowingly. Now, the jury received an instruction that included the word knowingly and the word knowingly, though, was simply defined as voluntary, not by mistake. In other words, it's hard to come up with an example where it wouldn't be voluntary. I guess if he was under the influence of drugs and didn't know what he was saying. It still doesn't get to an element that would include some sort of corrupt intent or some kind of wrongful intent. And every single case that is examined in an obstruction statute, always, whenever there's a challenge to its constitutionality in terms of vagueness, the answer is always, this is okay because it talks about corrupt intent or because it says wrongfully. There are a very small number of obstruction type statutes worded the same as this, but there are no cases, to my knowledge, interpreting that language. I don't believe the government can point to any either. It's so broadly based that, in fact, it implicates the First Amendment in a variety of ways. You can imagine a situation where a newspaper were to print a story detailing law enforcement efforts to enforce sex trafficking or law enforcement abuses or law enforcement techniques. All of those things would clearly, in some way, interfere with sex trafficking enforcement and could not possibly be enforceable. The statute is just plainly unconstitutional. The lack of mens rea makes it extraordinarily overbroad. You're saying that mens rea for that section D stands all by itself and that other words like knowingly, which are in the statute at different spots, doesn't apply to that section? That is what I'm saying, Judge. I would say that even if the word knowingly applies to that section, because of the way knowingly was interpreted for the jury by the judge as just being voluntary, it would still not pass constitutional muster. But the government has conceded in its brief, I believe, that Congress did not assign a knowing element. Rather, because it was silent as to that, it was appropriate to assign a knowing element. We respectfully disagree. It was not proper to assign a knowing element. It would only be proper to assign a wrongful element or a corrupt element, which is the phrase normally used. Even if you can get past that facially unconstitutional point, then you can go on to the question about whether or not could a normal person understand what's prohibited? Well, frankly, no. As I've said, there's such a broad scope of conduct that would be prohibited. Does it encourage arbitrary enforcement? I think this is an example of where it does. This is an example of someone who, if they did anything, they committed contempt, were punished for it already. To then say that that act of contempt constitutes obstruction of a sex trafficking investigation is really just a way to impose a tremendously disproportionate penalty. I mean, that's punishable by up to 20 years under the guidelines. And so it does lend itself to arbitrary enforcement, both in Mr. Farrar's case, but in a lot of cases that we can imagine. And Mr. Farrar's conduct doesn't even clearly fit within the statute as what we would think of as obstructing a sex trafficking investigation. I see that my time is up. Thank you. Thank you. Good afternoon. I'm Van Vinson. I represent the United States in this matter. To answer Judge Moore's question to defense counsel, if there were 10 different drug defendants, all investigated separately, indicted separately, and you had to call perhaps one witness as to each 10, the same witness in each case, the government would submit that that would be 10 separate contempt violations if at each case that individual elected not to testify. The United States would have to call him for each case because the witness, Mr. Farrar being a defendant, would have the opportunity to testify or not testify. You wouldn't know until you actually called the witness to the jury to determine whether they would testify. But the difference between my hypo and this actual case is that there was a linkage, which as I understand it was the conspiracy count, that the particular 30, say, defendants were all linked in a single conspiracy and that they were charged originally in one indictment, right, and then their trials were separated because of convenience reasons and other reasons. Am I right about sort of the overview of what was happening here? There is a linkage, both as to the conspiracy, but also there's substantive counts of violations of 1591A in the statute, pardon me, in the indictment, which is count in the third superseding indictment, that's count 13, but there's also the conspiracy violations. So why isn't it a double jeopardy violation to say that the government was not going to testify? The government can go seriatim and charge this defendant with contempt when he has already announced he's not going to testify as to any of the defendants in the particular conspiracy. There's two bases here, Your Honor. First, trial number one, which the government refers to in its brief as to criminal case 10CR-260, which is the underlying original trial. That related to particular defendants. Contrary to defense counsel's argument, the United States did not move to sever any defendants in the case. The United States had opposed all severances, asked the district court to reconsider all severances in relation to that underlying case. The district court and or the defendants at separate times asked for the severance or granted the severances. District court based on the defendant's motions. So that trial related to particular defendants. The effect of the severance is to create another case. The effect is because you then have to go through another trial with the other defendants. Thus, the witness could choose to testify at that time at a later date. The fact that you refused to testify on a particular date, perhaps being held in contempt might change your mind. Also, that was a civil... Before we get to the also, the Yates case would seem to be on point with this situation in that in Yates, the Supreme Court, as I understand it, said you can't ask 11 questions which are, was so and so a communist? Was so and so a communist? Was another person a communist? Was another person? So why isn't this case just like the Yates case, in which case there would be a double jeopardy violation? Because the refusal to testify was at separate proceedings related to separate defendants in the matter. Additionally, the original... Suppose then, so the case that we have in front of us is the deposition in a case involving potentially some subset of the defendants in the Adden case, right? Correct, Your Honor. So could there only be one contempt vis-a-vis, say, the seven defendants in that case? Or could there be seven contempts? In relation to the deposition of September 2012, which resulted in the indictment in the case that we're up here on, the underlying case that we're up here on, that could only be one contempt because that's one proceeding. So he refused to testify as to those defendants in those future trials, and the United States outlined the future trials at the time of the deposition. So there were named defendants that were the deposition concerned? Yes, Your Honor. So would there be a potential for a bad government to separate a trial, a conspiracy case of 30 defendants, and seek to have 30 separate trials, hypothetically, and then go after a witness for not testifying 30 separate times, and that would be contempt proceedings? Well, Your Honor, I'd want 30 trials in any case with 30 defendants. So you're saying a practical consideration? I would submit, not to be facetious, Your Honor, but the government, I find it impossible to believe that any assistant would want to sever their case into 30 separate trials, or even two separate trials in a case of this size with these defendants. It creates multitudes of issues for the government to try to do that. In this case, there were going to be at least four or five trials, right? Based upon the severance, it could be up to seven trials. Now the defendant, in relation to at least two of those trials, had no testimony in the United States, which was trial number four at the deposition, stated that he didn't have any information associated with that trial. But if the case was divided up into four separate trials, and he was called at each time, there would be four separate contempts, and he could be sentenced on each one of those. If it played out that way, now the deposition was to cover all the future trials, so therefore one proceeding for each of those future trials. So I think the deposition takes care of that, that you've been called for that trial. But you don't intend to call them anymore for any future trials? The United States could call the witness. What the effect is if the witness refuses to testify would be something to be determined at a later time. Could it be a different charge than contempt? Could it be another 1591 violation or 1591D violation? That would be something that would have to be looked at. There are other issues now with this particular defendant. If he was called to testify, as I said, that would be a violation of your supervised release because it would be a violation of law. You could always find him in civil contempt as opposed to criminal contempt? Yes, Your Honor, you could be. Also, Judge Moore, in relation to your previous question, the first trial with Judge Campbell, which was the result of the March through May trial, trial number one, was under Rule 48 of the Rules of Criminal Procedure. It wasn't an indictment in that case. I think that's a distinction also, whether or not it's proceeded for under Rule 48, which is the contempt powers of the court, which the court then has to sign and request that the United States proceed. Judge Campbell, when Farrar refused to testify at the deposition, referred it over and said the United States can go get an indictment if they want to, but he didn't refer it over under Rule 48, unlike the first trial for contempt. The United States would be happy to answer any future questions. It does seem that your answer to Judge Drain's questions suggests that there could, in fact, be multiple contempts for the same basic refusal to testify against this group of defendants. It's only happenstance that there was the one case and now the second case, which was the deposition, being only two. In fact, I think your answer suggests that there could be some more down the pipeline if there were subsequent refusals at other trials. I believe that the court could always hold the defendant in civil contempt. That is not a double jeopardy clause. Whether or not the defendant could be prosecuted for contempt, I think, is an open question for future. Because he was called to testify at the future trials, that's what the deposition covered. If you take trial number one, he was only called to testify to those defendants at that particular trial. Any testimony, had he given any, couldn't have been used in the prosecution of the others because of Crawford. The United States has to call the witness. The fact that he cooperated, the fact that he testified at the grand jury, all those matters. Pre-Crawford, we could have used the grand jury testimony because he was unavailable as a witness. Post-Crawford, we have to call him. So at any trial, if we want to try to introduce that testimony, we have to make the attempt to call the witness. Now, does he become unavailable because, and therefore there's no issue with contempt because he's unavailable as a witness, and therefore even under Crawford, his grand jury testimony now becomes admissible? Those are open questions for the future. But as far as this particular case, is it double jeopardy as to the first criminal contempt under Rule 48 for the refusal to testify at a trial related to specific defendants? The answer is no, the United States submits. If he were called and the United States attempted to indict the defendant for contempt again, in the same case related to the same defendants, perhaps there is an argument then that it would be double jeopardy. But at this stage, there is no such argument. The United States submits. Your opponent was also dealing with the question of the statute and the indictment having to do with the mens rea issue? Well, the United States submits that the law is clear that where an indictment does not contain a mens rea requirement, it's a general intent statute. Therefore, a general intent statute requires knowingly as the mens rea requirement. The statutes that are cited by the defense counsel in relation to that argument all have written into the statute the word either corruptly or willfully. But here, the statute was silent as to the intent, and therefore knowingly is the proper charge and was properly given by the district court. I guess I'm curious about the intent element with regard to Mr. Farrar in the sense that when he refused to testify for whatever reason, how was he to know that he was in the process of obstructing prosecution or obstructing the flow of the case or enforcement of this particular statute? I mean, if somebody's going to do something wrong, like rob a bank, they know that's wrong. If somebody's going to commit a crime, they basically know that they're committing a crime. But here in this case, he simply refused to testify at the How was he to know that that would be a consequence of failing to testify? The defendant knows why he's being called to testify, what the subject matter is that he's being called to testify about, which was sex trafficking. So it's not unknown to the defendant what the investigation is. It's not a gotcha situation that you didn't know we were looking at this and we called you and it's unfamiliar with you. So he knows why his testimony is wanted by the United States. He knows that he's not providing that. He knows that we have to call him as a witness at the trial. We don't have that option. The United States would submit that persons within the United States understand what the purpose of a trial is, is to put on the proof to attempt to convict an individual of a crime. And that by refusing to testify, that you are withholding that information that could be used to convict an individual. Or perhaps from the defendant's standpoint, to help acquit the individual. So it's not always just going to necessarily be based on the government's desire to have a witness testify. So from that perspective, the United States submits that he knows and it's not vague or ambiguous as to what his actions were and how it affected the obstruction or prevented the enforcement. What are the consequences of a potential 20 year offense? Usually the more serious the consequence, the more involvement or the more illegal activity so to speak. And I guess I'm just a little concerned here about the fact that someone decides not to testify in a deposition and all of a sudden it becomes like a crime of omission as opposed to commission maybe. Well your honor, when it comes to the penalty associated with it, under 18 U.S.C. 401, the contempt statute, the penalty is up to life imprisonment because it has no penalty provision. The law provides it, therefore it's up to life imprisonment. And there are actually cases where individuals refuse to testify, say at a murder trial. And they were sentenced to the same sentence, not the same as if they committed the murder, but they were sentenced to a lot of time, more than 15 months. What about the obstruction statute? Well the penalty, what Congress provides up to 20 years imprisonment doesn't make the statute onerous or vague or ambiguous. The district court is going to determine the sentence. In this case he received a 15 month sentence. So the argument that because of possible penalty, for example under 401, the possible penalty is life imprisonment, he was also convicted of that. Does a person know that when they go in to refuse to testify that they could be facing up to life? It's not a question of do you know what the penalty is, do you know what acts you're taking and what the consequences are, or can you foresee what the consequences of those acts are. In this case the defendant knew what the acts were and could foresee what the consequences were. Thank you very much. Happy to answer any further questions. Thank you. Your Honors, I'll do my best to address some of the questions that I think were left open. I think it's actually telling that Mr. Benson at least more than once indicated that the reason for the second criminal contempt was because Mr. Farrar still was refusing to testify. In other words, the government was using criminal contempt as a substitute for civil contempt. That's not the way this process is supposed to work.  The government doesn't deny that the judge had the ability and may continue to have the ability to hold Mr. Farrar in civil contempt for the duration of the proceeding in order to compel his testimony. Perhaps there are certainly issues with that we would probably argue against if it happened, but that's not what we're here today for. The government is attempting to use criminal contempt as a persuasive method. That is not what criminal contempt is for. Saying that these were all separate proceedings because they were severed and therefore can lead to separate contempts is sort of belied by the fact that this material witness deposition was going to cover all of the defendants, and these people were indicted altogether because of an ongoing criminal conspiracy. What was the purpose of the material witness deposition? Thank you, Your Honor. The purpose of the material witness deposition was to preserve Mr. Farrar's testimony in the event that he either failed to or refused to testify at trial, an event which frankly never occurred because he was sentenced and convicted of contempt. And that's why there was no actual effect on any of these proceedings. That's also why Mr. Farrar sitting there that day had every reason to believe that if he refused to testify, he would remain in confinement, and perhaps reason to believe that if he refused to testify, maybe he would be prosecuted again for contempt, although it's our position he should have been confident that he wouldn't face double jeopardy. He certainly couldn't have been sitting there thinking Congress has authorized a 20-year sentence for my action motivated by fear in refusal to testify. Had he simply not shown up, the sentence for failure to appear by witness has a max of something like 2 years, and forgive me for not remembering what it is, but it's nowhere near 20 years. So the reason he was there is important because it goes to what he would have been thinking, what he would have known, and what the actual effect on the proceedings would have been, which was essentially none because no one was ever deprived of any testimony. Again, it was stipulated that he had provided all the information he had prior to trial. Mr. Vinson suggested that maybe double jeopardy didn't apply because the first one was a misdemeanor contempt. The court's made clear that double jeopardy applies equally to a non-summary criminal contempt. I've never heard anything suggest that double jeopardy wouldn't attach under circumstances of a bench trial versus a jury trial or an indictment. The government argues, going to the constitutionality of 1591, that when the law is not clear or when Congress doesn't attach a particular mens rea, that it's, they seem to imply, always appropriate to add a knowing element. That is simply not the law. The Staples case makes it clear that it's then a question of law for the court about what mens rea to apply in those circumstances. The Staples case was a regulatory type offense. In most of the cases where you have something akin to strict liability are regulatory type offenses. They're certainly not offenses that implicate, again, freedom of speech and other lawful and protected conduct or have, in this case, you know, a 20-year potential sentence. What's wrong with the normal implication of the mens rea being knowing? I'm sorry, Your Honor, I missed the first part. What's wrong with the normal presumption that the mens rea should be presumed to be knowingly? In this case, it's wrong because knowingly doesn't create enough of a, it doesn't create any real criminal intent. All knowing means, at least the way the jury was instructed, was a voluntary act. The Enron case, I'm sorry, it's not Enron, but the Arthur Anderson case. In Arthur Anderson, which does contain the language about a wrong, it says knowingly, it uses some of the wrongful language, but the court examined that very carefully and said the only reason why it was appropriate. In that case, the jury was instructed, given an instruction, that basically undermined the wrongfulness aspect of the statute, and the court said that's improper because in order to hold someone guilty of obstruction, there, again, has to be that wrongful element, that corrupt intent is the word I've been trying to use because that's what's frequently used. So knowing isn't enough. It doesn't get you to corrupt. It doesn't get you to wrongful. It simply gets you to acting voluntarily. Not even knowing of the possible consequences, just your act is voluntary. That's the instruction. What's your best case to support your position here? There are no cases interpreting this language, but Arthur Anderson is probably your best case that's going to look at the importance, and that's a Supreme Court case, the importance of requiring a degree of criminal intent in an obstruction case. And if that criminal intent isn't properly emphasized to the jury, then that jury instruction is improper. Again, that language in that statute was okay because it had corrupt intent, but the way it was described to the jury was improper because they removed the need for wrongful conduct. Are you saying that this obstruction section is a specific intent crime as opposed to general intent? Which obstruction section, Your Honor? The one we're arguing about today? No, it should be a specific intent crime. I believe that all the case law that's referred to contempt has made it something approaching specific intent, something far beyond what's really a strict liability crime the way the government is interpreting it, not even general intent. They're really calling it strict liability. You acted volitionally, and therefore you're criminally liable. That's what the government is saying. It's notable that the jury came back and asked whether or not fear could negate the knowing element, and they were told no, it couldn't. So they were concerned about this. The jury wanted to know if he had any sort of criminal mens rea, but they were told no, he didn't have to. He only had to have acted voluntarily. Unless there are any other questions? Thank you very much. Thank you. Thank you both for your argument. The case will be submitted, and Mr. Mackler, I believe you're appointed pursuant to the Criminal Justice Act, and we thank you for your service to your client and the court. The case will be submitted. Would the clerk call the next case, please?